IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

| | |
|---|---|
| TUWANNA BRADLEY　　　　　　　　　　* | |
| 　　　　　　　　　　　　　　　　　　　* | |
| 　　　　Plaintiff　　　　　　　　　　* | |
| 　　　　　　　　　　　　　　　　　　　* | |
| V.　　　　　　　　　　　　　　　　　　* | |
| 　　　　　　　　　　　　　　　　　　　*　　NO: 5:09CV00395　SWW | |
| ALLEGIANCE HEALTH　　　　　　　　　　* | |
| MANAGEMENT, INC, d/b/a　　　　　　　* | |
| Inspiration Counseling Center; and　* | |
| TIFFANY KAGEBEIN　　　　　　　　　　 * | |
| 　　　　　　　　　　　　　　　　　　　* | |
| 　　　　Defendants　　　　　　　　　　* | |
| 　　　　　　　　　　　　　　　　　　　* | |

**ORDER**

　　　　Plaintiff Tuwanna Bradley ("Bradley") brings this employment discrimination case against her former employer, Allegiance Health Management, Inc. ("Allegiance") and Allegiance employee Tiffany Kagebein ("Kagebein"), pursuant to Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Before the Court is Defendants' motion for summary judgment (docket entries #13, #14, #15), Bradley's response in opposition (docket entries #21, #22, #23), and Defendants' reply (docket entry #28). After careful consideration, and for reasons that follow, the motion for summary judgment will be granted in part and denied in part.

**I.  Summary Judgment Standard**

　　　　Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  As a

prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing a genuine issue for trial.'" *Id*. at 587 (quoting Fed. R. Civ. P. 56(e)). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).

## II. Background

From February 2007 until October 2009, Allegiance operated an outpatient geriatric counseling clinic in Stuttgart, Arkansas, known as Inspirations Counseling Clinic ("the Clinic"). In February 2007, Kagebein, who is white and served as the Clinic's program director, interviewed Bradley, who is black, for a job. When Bradley applied, only two available positions matched her qualifications: mental health technician and driver. Bradley, who had a bachelor's degree in psychology, accepted a position as mental health technician, which paid $8.00 per hour. According to Bradley, she accepted the job because Kagebein told her that positions "more in line" with her degree would become available, and she would be "the first in line to apply" for a promotion. Docket entry #21, Ex. #1 (Bradley Dep.) at 16-17, 37.

Kagebein denies that Bradley ever expressed interest in a promotion, *see* docket entry

#21, Ex. #3 (Kagebein Dep.) at 35, and it is undisputed that Bradley signed a document soon after her hire in which she acknowledged that the hiring manager made no commitments regarding pay increases or promotions. *See* docket entry #13, Ex. #3.

In May 2007, Bradley's job duties changed from assisting therapists with non-clinical patient care to transporting patients to and from the Clinic. On May 22, 2007, Bradley received a performance evaluation in which Kagebein noted that Bradley was a valuable and dependable employee. As part of her performance evaluation, Bradley completed a questionnaire in which she stated: "I feel that I am too qualified for my current position. As I stated earlier, I go above and beyond the call of duty when it comes to my current position. I feel that the company can help me improve by giving me an opportunity to have optimal growth and a chance of advancement." Docket entry #21, Ex. #4. In July 2007, Bradley was promoted to the position of lead driver, and her pay increased to $10.00 per hour.

In December 2007, Allegiance underwent a reorganization. Sam Huckabee, who had been serving as the company's regional director for Arkansas, was named regional vice president for Mississippi, Alabama, Georgia, Florida and North Carolina. At the same time, Robert Brewster, who had been serving as the regional director for Louisiana, was named regional vice president over Louisiana and Arkansas.

Brewster was charged with the task of finding a new regional director for Arkansas, and he limited his search to individuals who were then serving as program directors in Allegiance's clinics located in Arkansas. Kagebein and three other program directors expressed interest in the job, and after interviewing the candidates, Brewster selected Kagebein.

After Kagebein's promotion to regional director, Brewster consulted her regarding a

person to replace her as program director. Kagebein suggested the Clinic's community educator, Leah Carter, for the program director's job, and she recommended the Clinic's office manager, Samantha Stone, as the person to replace Carter as community educator. Carter and Stone are white, and Stone is Kagebein's cousin.

Brewster did not post or advertise the job openings for program director and community educator. According to Brewster, he did not consider Bradley for the positions because Kagebein told him that Bradley was resigning. Kagebein states that she believed that Bradley was going to resign based on information she had received from another employee. Docket entry #21, Ex. 3 (Kagebein Dep.) at 19. Consistent with Kagebein's recommendations, Brewster promoted Carter to the program director's position and Stone to the community educator's position.

On January 25, 2008, Kagebein called a staff meeting to announce that she would be assuming the position of regional director, Carter would become program director, and Stone would fill Carter's position as community educator. The same day, Bradley submitted a letter of resignation, effective February 8, 2008.

After she resigned, Bradley filed a discrimination charge with the Equal Employment Opportunity Commission, alleging, among other things, that Allegiance denied her promotions because of her race. After receiving notice of her right to sue, Bradley commenced this employment discrimination action, claiming that Allegiance failed to promote her and constructively discharged her based on her race. Bradley also charges that Defendants subjected her to a racially hostile work environment.

### III.  Discussion

#### A.  Failure to Promote

Bradley alleges that Allegiance denied her promotion to the regional director, program director, and community educator positions based on her race.  To establish a *prima facie* case of discrimination based on a failure to promote, Bradley must show that (1) she was a member of a protected group; (2) she was qualified and applied for promotion to an available position; (3) she was not selected for the position; and (4) a similarly-situated employee who was not a member of a protected group was selected instead.  *Allen v. Tobacco Superstore, Inc*. 475 F.3d 931, 937 (8th Cir. 2007)(citing *Shannon v. Ford Motor Co*., 72 F.3d 678, 682 (8th Cir. 1996)).

If Bradley establishes a *prima facie* case, the burden of production shifts to Allegiance, which must rebut the presumption of discrimination with evidence that Bradley was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason.  *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  Once Allegiance meets its burden, Bradley may prevail by pointing to evidence which, if believed, would expose Allegiance's stated reason as a mere pretext for intentional discrimination.  *Id*.

##### *Regional Director*

Allegiance asserts that Bradley is unable to make out a *prima facie* failure-to-promote claim with respect to the regional director position because she did not have experience as a program director and thus did not possess the minimum qualifications for the job.  Allegiance presents Brewster's deposition testimony in which he states that it was essential that a candidate for regional director have experience working as a program director.  When asked how he selected the regional director, Brewster answered: "In my mind, that person had to be at least a

Program Director for us because they would have all the training, at least to be able to run a Unit and be able to help on that Unit Level." Docket entry #21. Ex. #2, at 11. Brewster testified that he interviewed four program directors who worked at various clinics in Arkansas, and he did not review their personnel files. *Id*. at 12-13.

To satisfy the second element of a *prima facie* failure-to-promote claim, Bradley must show that she was at least minimally qualified for the promotion at issue. *See Rose-Matson v. NME Hospitals, Inc*., 133 F.3d 1104, 1110 (8th Cir. 1998)(holding that employee failed to establish a prima facie failure-to-promote case because she offered no evidence of her qualifications or the qualifications necessary for the position sought.)  Here, Bradley alleges that she was qualified to be regional director, but she fails to provide specific facts showing that she possessed the minimum qualifications for the job.  Furthermore, Bradley offers no evidence to discredit Brewster's testimony that when he made the hiring decision, he believed that experience as a program director was a minimum qualification for the job.  Accordingly, the Court agrees that Bradley has failed to create a genuine issue of material fact precluding summary judgment on this claim.

### *Program Director*

Allegiance contends that it had a legitimate, nondiscriminatory reason for not considering Bradley as a candidate for the program director position: "at the time Kagebein recommended Leah Carter for the position . . . , she believed Bradley was leaving Inspirations for another job." Docket entry #14, at 12.  Because Allegiance has proffered non-discriminatory reason for its hiring decision, Bradley shoulders the burden to discredit the asserted reason and show that the circumstances permit a reasonable inference that race was the real reason for the decision.  *See*

*Johnson v. AT & T Corp.*, 422 F.3d 756, 763 (8th Cir. 2005). The Court finds that Bradley has met this burden.

In deposition, Kagebein testified that she "knew" Bradley was resigning because another employee, Lori Herron, told her that Bradley had another job. *See* docket entry #21, Ex. #3, at 20. However, Herron denies that she told Kagebein that Bradley had plans to resign. *See* docket entry #21, Ex. #5 (Herron Aff.), ¶ 5. Herron testifies: "I never told anybody anything about Tuwanna Bradley leaving because I didn't know that and found out the same time the other employees did which was after the meeting at which the promotions were announced." *Id*. What is more, Kagebein admits that she offered Bradley a promotion to the position of office manager *after* she learned that Bradley was resigning, which contradicts her explanation for not considering Bradley for the program director and community educator positions. *See* docket entry #21, Ex. #3 (Kagebein Dep.) at 42.

"In some cases, evidence that an employer's proffered nondiscriminatory explanation is wholly without merit or obviously contrived might serve double duty; it might serve the additional purpose of permitting an inference that [unlawful] discrimination was a motivating factor [for an employment decision]. In such a case, '[n]o additional proof of discrimination is required.'" *Nelson v. Boatmen's Bancshares, Inc*., 26 F.3d 796, 801 (8th Cir. 1994)(quoting *Gaworski v. ITT Commercial Fin. Corp*., 17 F.3d 1104, 1110 (8th Cir.1994)(quoting *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 2749 (1993)). In this case, the Court finds that the evidence discrediting Allegiance's nondiscriminatory explanation together with Bradley's *prima facie* showing (discussed below) supports a reasonable inference that Allegiances's failure to promote Bradley to program director was motivated by racial

discrimination.

As an alternative argument, Allegiance asserts that summary judgment is proper because "the undisputed evidence is that Bradley was not more qualified than the person who got the position or even similarly qualified." Docket entry #14, at 13. It is not clear whether Allegiance forwards this argument in an attempt to articulate an additional nondiscriminatory reason for its hiring decision or whether it is challenging Bradley's ability to establish a *prima facie* case.

The burden to articulate a nondiscriminatory reason for employment action requires that a defendant "clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." *See Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 255, 101 S.Ct. 1089, 1094 (1981). A defendant must "frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext." *Id*. Here, Allegiance presents no evidence that Kagebein and Brewster failed to consider or rejected Bradley based on her job qualifications or that either decisionmaker knew that Carter's qualifications were superior to Bradley's at the time the hiring decision was made. Although the relative qualifications of job candidates may serve as a nondiscriminatory reason for a hiring decision, an employer is prohibited from inventing a post hoc rationalization for its actions at the rebuttal stage of the case. *See E.E.O.C. v. Wal-Mart Stores, Inc*. 477 F.3d 561, 570 (8th Cir. 2007)(citations omitted); *see also Hill v. Seaboard C.L.R. Co.*, 767 F.2d 771, 774 (11th Cir. 1985)*(*"Of course, failure to promote a plaintiff because the person actually promoted was more qualified is a non-discriminatory reason, but the articulation of that reason must include the fact that the decision-maker knew that the promoted individual's qualifications were superior at the

time the decision was made."). Because Allegiance presents no evidence that it failed to consider Bradley for the program director position based on her job qualifications, the Court will assume that Allegiance's argument is intended only as a challenge to Bradley's *prima facie* showing.

Contrary to Allegiance's suggestion, it is inappropriate at the *prima facie* stage to weigh Bradley's qualifications against Carter's. *See Turner v. Honeywell Federal Mfg. & Technologies*, LLC, 336 F.3d 716, 722 (8th Cir. 2003)(quoting *Hawkins v. Anheuser–Busch Inc.*, 697 F.2d 810, 813–14 (8th Cir.1983)("""The plaintiff need not prove [her] relative qualifications to meet [her] prima facie burden. To require such proof of relative qualifications at the *prima facie* stage of a case would undermine the *McDonnell Douglas* ... framework and 'collapse [its] three step analysis into a single initial step at which all issues would be resolved.'"); *see also Frost v. McDonald*, No. 5:08CV00078 JLH, 2009 WL 3634095, *4 (Nov. 2, 2009 E.D. Ark.)(citing *Lidge-Myrtil v. Dear & Co.*, 857 F. Supp. 666, 670 (W.D. Mo.1994)(quoting *Netterville v. State of Mo.*, 800 F.2d 798, 802-03 (8th Cir.1986)).

The Court finds that Bradley has met her *prima facie* burden. She is a member of a protected class, she had no opportunity to apply for the program director position,[1] and a white employee was selected instead. Furthermore, Bradley has presented evidence showing that she met the minimum qualifications for the job. Allegiance's written job description for program

---

[1]The Eighth Circuit has held that a formal application for a job opening is not required to establish a *prima facie* case of discrimination if the opening was not officially posted or advertised and either (1) the plaintiff had no knowledge of the job from other sources until it was filled or (2) the employer was aware of the plaintiff's interest in the job notwithstanding the plaintiff's failure to make a formal application. *See Gentry v. Georgia-Pacific Corp.,* 250 F.3d 646, 652 (8th Cir.2001).

director provides that one year of experience in an administrative or supervisory capacity is desired but that equivalent experience will be considered, *see* docket entry #21, Ex. #4, and Bradley presents evidence that she had a college degree and experience as a manager.  In sum, the Court finds that genuine issues of fact preclude summary judgment on this claim.

*Community Educator*

Regarding Bradley's claim that Allegiance failed to promote her to the community educator position, Allegiance argues that (1) Kagebein did not consider Bradley for the position because she believed that Bradley was resigning and (2) "Bradley was not more qualified than the person who got the position."  Docket entry #14, at 14.

For reasons previously discussed, the Court finds that Bradley has come forward with evidence to rebut Kagebein's claim that she did not consider Bradley for promotion because she believed that Bradley was resigning.  As for job qualifications, Bradley need only show that she was minimally qualified for the job; she has no present burden to show that her qualifications exceeded Stone's.  Allegiance's job description for the community educator position states that the position requires a bachelor's degree in marketing or a health care field, a requirement that Bradley met.  In contrast, Stone had a high school education and no college degree.  In fact, Kagebein has testified that she did not consider the job qualifications listed on Allegiance's job description when she recommended Stone for the job.  The Court finds that Bradley has come forward with evidence that she was at least minimally qualified for the position of community educator. *See Lyoch v. Anheuser-Busch Companies, Inc*. 139 F.3d 612, 615 (8th Cir. 1998)(citing *Thomas v. Denny's, Inc*., 111 F.3d 1506, 1510 (10th Cir. 1997)(noting that when a position is not posted, the hiring process is secretive, and the hiring criteria is subjective, a

plaintiff has a light burden to make out a *prima facie* case of failure to promote).  In sum, genuine issues of fact preclude summary judgment on this claim.

### B. Hostile Work Environment

An employer creates an actionable hostile work environment if "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe and pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).  To hold an employer liable for a racially hostile work environment caused by the actions of a supervisor, the aggrieved employee must show: (1) she is a member of a protected group; (2) unwelcome harassment occurred; (3) a causal nexus existed between the harassment and her protected-group status; and (4) the harassment affected a term, condition, or privilege of employment. *See Carter v. Chrysler Corp.*, 173 F.3d 693, 700 (8th Cir.1999).[2]

To be actionable, an allegedly hostile work environment must be both objectively and subjectively offensive--one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.  *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787, 118 S.Ct. 2275, 2283 (1998)(setting forth standards to evaluate claims of hostile work environment based upon sexual harassment); *see also Gipson v. KAS Snacktime Co.*, 171 F.3d

---

[2] With regard to claims of coworker harassment, a plaintiff must show that her employer knew or should have known of the harassment and failed to take appropriate remedial action. *See Joens v. John Morrell & Co.* 354 F.3d 938, 940 (8th Cir. 2004).  Such proof is not necessary with regard to a claim that a supervisor committed harassment.  An employer may be vicariously liable for an actionable hostile environment created by a supervisor with immediate, or successively higher, authority over the plaintiff.  *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764-65(1998).  In this case, it appears that Bradley claims that her supervisor, Kagebein, harassed her.

574, 578 (8th Cir. 1999) ("The same standards are generally used to evaluate claims of hostile work environment based upon sexual harassment and racial harassment."). In determining whether sufficient evidence of a hostile work environment has been presented, the totality of the circumstances must be considered, including the frequency and severity of the discriminatory conduct, whether such conduct was physically threatening or humiliating, as opposed to a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance. *See Vajdl v. Mesabi Academy of KidsPeace, Inc*., 2007 WL 1201867, *3 (8th Cir. April 25, 2007)(citing *Duncan v. General Motors Corp*., 300 F.3d 928, 884 (8th Cir. 2002)).

In support of her claim that Allegiance subjected her to a racially hostile work environment, Bradley alleges that she was subjected to racial stereotyping based comments about her status as a single, black mother. In deposition, Bradley testified that her written performance evaluation originally contained a statement that she was a single mother of four children, but she instructed Kagebein to remove that statement. *See* docket entry #21, Ex. #1 (Bradley Dep.) at 51-52. Bradley further testified that Kagebein often commented that she was a single mother of four children and once asked her why black women have children without being married. *Id*. at 53.

Kagebein's alleged comments about Bradley's status as a single, black mother simply do not support a finding that Bradley endured severe, pervasive work conditions that a reasonable person would find hostile or abusive. *See Canady v. Wal-Mart Stores, Inc*., 440 F.3d 1031, 1035 (8th Cir. 2006)(finding that supervisor's description of himself as a "slave driver" and uttering "what's up, my nigga" to a black employee did not give rise to an actionable claim of racial hostility). The Court finds no genuine issues for trial regarding Bradley's claim that Allegiance

subjected her to a racially hostile environment.

### B.  Constructive Discharge

Allegiance asserts that Bradley has no evidence to support a constructive discharge claim.  The Court agrees.  "'Constructive discharge occurs when an employer deliberately renders the employee's working conditions intolerable, thereby forcing her to quit.'" *Brenneman v. Famous Dave's of America, Inc.*, 507 F.3d 1139, 1144 (8th Cir. 2007)(quoting *Tatum v. Ark. Dep't of Health*, 411 F.3d 955, 960 (8th Cir. 2005)).  To prove constructive discharge, Bradley must show that (1) a reasonable person in her situation would find the working conditions intolerable and (2) Allegiance intended to force her to quit or could have reasonably foreseen that she would quit as a result of its actions.  *Id.* (citations omitted).

Bradley contends that failing to consider her for a promotion and promoting three white employees clearly indicated to her that "her future with the company was zero . . . . " Docket entry #22, at 14.  For reasons previously stated, the Court finds that Bradley presents no evidence that she endured a racially hostile work environment.  Furthermore, the Court finds that the denial of a promotion, standing alone, does not amount to a working condition that renders employment intolerable.  *See West v. Marion Merrell Dow, Inc.*, 54 F.3d 493, 498(8th Cir. 1995)(stating that "frustration and embarrassment at not being promoted do not make work conditions sufficiently intolerable to constitute constructive discharge"); *Maney v. Brinkley Mun. Waterworks & Sewer Dep't*, 802 F.2d 1073, 1075-76 (8th Cir.1986)(holding that black plaintiffs who were passed over for a promotion in favor of a less qualified white employee were victims of discrimination, but were not constructively discharged).

### IV.  Conclusion

For the reason stated, Defendants' motion for summary judgment (docket entry #13) is GRANTED IN PART AND DENIED IN PART.  The motion is granted to the extent that the Court finds no issues for trial with respect to Plaintiff's claims that Defendants (1) failed to promote her to the position of regional director because of her race, (2) subjected her to a racially hostile work environment, and (3) constructively discharged her based on her race.  Plaintiff's claims that Defendants failed to promote her to the positions of program director and community educator remain for trial.

IT IS SO ORDERED THIS 28TH   DAY OF SEPTEMBER, 2011.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE